# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| RONALD UNTERSHINE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> DIVERSIFIED CONSULTANTS INC. and JEFFERSON CAPITAL SYSTEMS, INC., <br><br> Defendants. | Case No.: 18-cv-679 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Ronald Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from him debts allegedly incurred for personal, family or household purposes, namely a consumer line of credit.

5. Defendant Diversified Consultants, Inc. ("DCI") is a debt collection agency with its principal offices located at 10550 Deerwood Park Blvd, Ste 309, Jacksonville, Florida 32256.

6. DCI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. DCI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. DCI is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Jefferson Capital Systems, LLC ("JCS") is a foreign limited liability company and debt collection agency with its principal place of business located at 16 McLeland Road, St. Cloud, Minnesota 56303.

10. JCS is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family or household purposes.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 189994, at *24-30 (M.D. Pa. Nov. 16, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018); *Chenault v. Credit Corp Sols.*, 2017 U.S.

Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

13. The primary purpose of JCS's business, and JCS's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)); *Torres*, 2018 U.S. Dist. LEXIS 49885, at *12-15 ("Because [the debt buyer's] principal (indeed, only) business purpose is to purchase debts and then collect on them, they clearly qualify as debt-collectors under the first definition.").

14. JCS's website contains an "About Jefferson Capital" webpage, which states:

> Jefferson Capital is an industry-leading provider of traditional and unique recovery services for consumer charged-off accounts. Our clients include creditors and national debt buyers. We offer services such as a Payment Rewards Collections Program, purchasing and servicing of secured and unsecured bankruptcies, as well as traditional purchasing of distressed portfolios.

http://www.jeffersoncapitalinternational.com/us/about-jefferson-capital.html (accessed April 6, 2018).

15. In addition to telephone and mail-based debt collection activities, JCS is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for JCS returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

3

16. CCAP shows that JCS *filed* 49 civil and small claims actions in Milwaukee County in March 2018 alone. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

17. JCS is a debt collector as defined in 15 U.S.C. § 1692a.

18. A company meeting the definition of a "debt collector" (here, JCS) is vicariously liable for the actions of a second company (here, DCI) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## **FACTS**

19. On or about March 8, 2018, DCI mailed a debt collection letter to Plaintiff regarding debt allegedly owed to JCS. A copy of this letter is attached to this complaint as Exhibit A.

20. The debt referenced in Exhibit A was incurred to purchase personal, family, or household goods.

21. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, Exhibit A is a form debt collection letter used by DCI to attempt to collect alleged debts.

23. Exhibit A is the first letter that DCI mailed to Plaintiff with respect to Plaintiff's alleged debt.

24. On its face, Exhibit A is confusing and misleading as to the character of the debt and the name of the creditor to whom the debt is owed.

4

25. Exhibit A states:

```
Current Creditor:   Jefferson Capital Systems, LLC
Current Account Number:      5260
Debt Description:   FINGERHUT DIRECT MRKTING
Original Account Number:  XXXXXXXXXXX5585
Agency Reference Number:     3954
Balance: $181.59
```

Exhibit A.

26. Exhibit A also states:

Your above referenced FINGERHUT DIRECT MRKTING issued by WebBank has been sold to Jefferson Capital Systems, LLC. The ownership of your account was transferred from WebBank to Bluestem Brands, Inc and purchased by Jefferson Capital Systems, LLC. Diversified Consultants, Inc. will be servicing your account on the new owner's behalf.

Exhibit A.

27. Exhibit A states that the ownership of the account was "transferred" from WebBank to Bluestem Brands, Inc., purchased by JCS, and that DCI "will be servicing your account on the new owner's behalf."

28. The statement in a debt collection letter that an account has been "transferred" or "assigned" is inherently confusing and ambiguous as to whether the account has been assigned or transferred for collection purposes the ownership itself of the account has been "assigned" or "transferred." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016) ("the word 'transfer' could mean either conveyance of title or assignment for collection . . . ."); *see also Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 520-21 (discussing the difference between "assignment for collection" and sale of the creditor's entire interest in the account to a third-party debt buyer).

29. The unsophisticated consumer would not be able to determine who actually holds the debt from reading Exhibit A, which identifies four separate entities potentially seeking to collect the debt: WebBank, Bluestem Brands, Inc., JCS, and DCI.

5

30. The unsophisticated consumer, upon seeing <u>Exhibit A</u>, would be confused and misled to believe the account had twice been sold as a defaulted debt, and that the debt would appear "toxic" on her credit report. Upon information and belief, Plaintiff's account was sold to Bluestem along with all other Fingerhut accounts, and was only sold as a defaulted debt once. *See* http://www.businesswire.com/news/home/20130919005320/en/Bluestem-Brands-Announces-Agreement-Santander-Consumer-USA.

31. Additionally, the unsophisticated consumer would be confused as to who actually owns the alleged debt, and to whom the alleged debt was originally owed. *See, e.g., Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 n. 6 (9th Cir. 2014).

32. Plaintiff was confused by <u>Exhibit A</u>.

33. Plaintiff had to spend time and money investigating <u>Exhibit A</u> and the consequences of any potential responses to <u>Exhibit A</u>.

34. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of <u>Exhibit A</u>.

### The FDCPA

35. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist.

LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes

creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

38. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

39. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

40. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
. . .
(2) the name of the creditor to whom the debt is owed;

8

41. The Seventh Circuit has held that a debt collector must state the name of the creditor in a non-confusing manner. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

## COUNT I – FDCPA

42. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

43. Exhibit A contains false, deceptive, misleading, and confusing statements about the character of the debt and the identity of the creditor.

44. Exhibit A confusingly and misleadingly states that WebBank "transferred" the debt to Bluestem Brands, Inc., without describing the scope of the transfer.

45. Exhibit A confusingly and misleadingly states to the unsophisticated consumer that Webbank "transferred" the debt to Bluestem Brands, Inc., which suggests to the unsophisticated consumer that the debt was being reported as toxic at the time of "transfer."

46. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

## CLASS ALLEGATIONS

47. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent initial collection letters in the form represented by Exhibit A, (c) seeking to collect a debt that was incurred for personal, family or household purposes, (d) between May 1, 2017 and May 1, 2018, inclusive, (e) that was not returned by the postal service.

48. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

49. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

50. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

51. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

52. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

53. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 1, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge

John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com